IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

IN RE:                                               Case No. **8:2015-mc-00284**

**APPLICATION OF DALLAH ALBARAKA
HOLDING COMPANY E.C.**

**Applicant.**
_____/

## MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO EX PARTE APPLICATION FOR DISCOVERY ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

Now into Court through undersigned counsel come Legal Advantage, LLC and Mirza Baig (collectively, the "Interested Parties"), who respectfully submit this Memorandum of Law in Opposition to Dallah Albaraka Holding Company E.C. ("Dallah")'s Ex Parte Application for Discovery Assistance Pursuant to 28 U.S.C. § 1782, and state as follows:

### I. INTRODUCTION

The Court should deny Dallah's Ex Parte Application for Discovery Assistance under 28 U.S.C. § 1782 (the "Application"). This Application is an improper attempt to circumvent the mandate of the agreed LCIA Arbitration Rules (London Court of International Arbitration), which prohibit resort by the parties to an arbitration to state courts; unnecessarily involves the Court in a matter within the exclusive jurisdiction of the agreed arbitration tribunal; violates the parties' expectation of confidentiality and privacy when agreeing arbitration; is manifestly unfair as 28 U.S.C. § 1782 discriminates against American companies when used by foreign persons; and is burdensome upon the Interested Parties as excessive and intrusive. The Court's discretion is best exercised and public policy best served by denying Dallah's application in a reasoned decision that applies the "Intel – AMD" factors to dissuade use of 28 U.S.C. § 1782 in private international arbitration as inconsistent with arbitrating parties agreements, federal arbitration policy and equity.

1

For these reasons as more fully articulated below, the Court should deny Dallah's Application.

## II. BACKGROUND

Two of the parties before the Court are parties to three agreements: the Share Subscription Agreement, dated December 22, 2006; the Ordinary Shares Warrant, dated December 22, 2006; and the Shareholder's Agreement, dated January 2, 2007. In two of the three agreements, there are ICC arbitration provisions that Applicant claims were agreed and that the Interested Parties deny, pointing to certain unusual errors and characteristics suggesting insertion of the ICC clauses after the agreements were executed by the Interested Parties. Further, both of the ICC provisions are inconsistent with the arbitration provision of the third contemporaneous document, which provides for arbitration with JAMS in Washington, D.C. Dallah sought to commence an ICC arbitration, but was immediately opposed by a jurisdictional objection asserting the above peculiarities. Thereafter, the Parties, through counsel in London and Dallas, began working to resolve this matter and agreed that if any arbitration was to proceed, that arbitration would be filed with the LCIA and conducted under the LCIA Rules. The instant matter was filed by Applicant's U.S. counsel prior to the Parties' agreement to resolve their jurisdictional dispute by agreeing to submit this dispute to LCIA arbitration.

## III. FACTS

Dallah Albaraka Holding Company ("Dallah") is a foreign company organized under the laws of Bahrain by certain Saudi Arabian investors based in Manama, Bahrain. Dallah has voluntarily entered a general appearance, thereby submitting to the jurisdiction of this Court.

On May 22, 2015, Dallah filed a Request for Arbitration against Tipton Equity Partners, LLC ("Tipton"), Mirza Baig and Akbar Sharfi, under the Rules of Arbitration of the International Chamber of Commerce ("ICC"). The instant Application was filed on June 1, 2015. Subsequently,

on or about July 27, 2015, Dallah, Mr. Baig, Mr. Sharfi, and Tipton executed a written agreement that Dallah's claims would not be arbitrated under the ICC Rules. Instead, the parties agreed that any disputes would be submitted to the LCIA and arbitrated pursuant to the LCIA Rules in London, United Kingdom. *See Exhibit A, Arbitration Submission.* The Parties' Arbitration Submission Agreement states in pertinent part the following:

> Any claim, controversy, dispute or disagreement between the parties arising out of this agreement, including, without limitation, any question regarding its existence, validity or termination, shall be referred to and settled by final and binding arbitration conducted before a Tribunal of three arbitrators.
>
> …
>
> **The arbitration will be conducted according to the Rules of the LCIA**, formerly known as the London Court of International Arbitration, **which Rules are deemed to be incorporated by reference into this clause,** except as such are inconsistent with these provisions.

*Exhibit A*, at ¶ 1, 3 (emphasis added).

The LCIA Arbitration Rules in relevant sections provide:

> **Article 22 Additional Powers**
>
> **Article 22.2** states:
>
> By agreeing to arbitration under the Arbitration Agreement, the parties shall be treated as **having agreed not to apply to any state court or other legal authority for any order available from the Arbitral Tribunal** (if formed) under Article 22.1, except with the agreement in writing of all parties. (emphasis added)
>
> **Article 22.1** states:
>
> **The Arbitral Tribunal shall have the power**, upon application of any party or (save for sub-paragraphs (viii), (ix) and (x) below) upon its own initiative, but in either case only after giving the parties a reasonable opportunity to state their views and **upon such terms (as to costs and otherwise) as the Arbitral Tribunal shall decide**:
>
> (v) **to order any party to produce to the Arbitral Tribunal and to other parties documents** or copies of documents **in their possession, custody or power <u>which the Arbitral Tribunal decides to be relevant</u>**; (emphasis added)

3

*See* LCIA Rules, Art. 22, *available at* http://www.lcia.org/Dispute_Resolution_Services/lcia-arbitration-rules-2014.aspx.

The arbitration dispute undeniably relates to Legal Advantage LLC ("Legal Advantage"), a Florida limited liability company. Mirza Baig is Legal Advantage's Chief Executive Officer and has "LCIA Article 22" control over Legal Advantage's documents and information.

## IV. ARGUMENT & AUTHORITIES

28 U.S.C. § 1782 has produced immense controversy when applications are filed relating to private international arbitration as it is completely inconsistent with federal arbitration case law, policy and the concept of party autonomy. The characterization of which governmental bodies Congress intended the law to relate to was settled in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). However, the throwaway reference by Justice Ginsberg to arbitration in *Intel* remains a source of confusion and serious judicial and academic disagreement. *Id.* at 258 (Justice Ginsburg quoted legislative history that listed the term arbitral in passing, stating, "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts"). What is unquestioned is that whether or not to grant discovery under 28 U.S.C. § 1782 is within the broad discretion of this Court. "A district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). The factors this Court may consider in evaluating Dallah's Application are:

(1) Whether the material sought is within the foreign tribunal's jurisdictional reach;

(2) The nature of the foreign tribunal and the character of the proceedings;

(3) The receptivity of the foreign tribunal to United States federal court judicial

assistant;

(4) Whether the request is an attempt to circumvent the foreign proof gathering restrictions or other policies of the foreign country or the United States; and

(5) Whether the request is unduly intrusive or burdensome.

*Id.* at 264-66.

Although courts have discretion to order discovery pursuant to § 1782, that discretion is "not boundless." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004). Recent cases have favored denial of § 1782 discovery when sought for private international arbitrations. In a case analogous to this one, *In re Grupo Unidos por el Canal*, the District Court for the District of Colorado analyzed the *Intel* discretionary factors with a sophisticated understanding of arbitration. That court found production improper because it would circumvent the arbitration panel's discovery restrictions, the arbitration panel did not appear receptive to the discovery, the party from whom discovery was sought was a party to the arbitration and had the right to access and control many of the documents subpoenaed from the third party, and because the requests were overly burdensome. *In re Grupo Unidos*, No. 14-mc-00226-MSK-KMT, 2015 U.S. Dist. LEXIS 50910, *29-30 (D. Co. April 17, 2015). The court specifically noted that the request was especially burdensome "in connection with an arbitration proceeding which, by its nature, is designed to minimize the burden of discovery on the parties." *Id.* at 30-31.

Here, Legal Advantage's CEO, Mirza Baig, is a party to the arbitration. The discovery sought can be obtained with the permission and upon order of the arbitral tribunal. The LCIA Rules, as incorporated into the Parties' agreements, explicitly prohibit Dallah from obtaining an Order from any court. Dallah's request is intrusive and burdensome, especially considering the nature of the LCIA proceeding.

5

A. **THE MATERIAL SOUGHT IS WITHIN THE FOREIGN TRIBUNAL'S JURISDICTIONAL REACH.**

As noted above, Mirza Baig has "LCIA Rule 22" control over Legal Advantage's materials, so there is no need for § 1782 aid. "A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. Here, the LCIA tribunal has jurisdiction over Legal Advantage's CEO, Mr. Baig. As its CEO, Mr. Baig has control over Legal Advantage's documents and information. The LCIA Rules permit the arbitral tribunal to order Mr. Baig to produce materials. *See* LCIA Rules, Art. 22, *supra*. Mr. Baig has agreed to and is bound by the LCIA Rules. If a LCIA arbitration tribunal decides discovery is appropriate, that Tribunal can compel Mr. Baig to comply with discovery. Legal Advantage's information is clearly within the LCIA tribunal's jurisdictional reach. *See Intel*, 542 U.S. at 264. This factor strongly militates against ordering duplicitous and unnecessary discovery under § 1782.

B. **DALLAH IS ATTEMPTING TO CIRCUMVENT THE LCIA RULES, WHICH PROHIBIT DALLAH'S APPLICATION AND LIMIT DISCOVERY.**

Recent cases have declined to order § 1782 discovery in arbitration, noting "[t]he popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness—characteristics said to be at odds with full-scale litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure." *In re Grupo Unidos por el Canal S.A.*, No. 14-mc-80277-JST)(DMR), 2015 U.S. Dist. LEXIS 52358 (N.D. Cal. Apr. 21, 2015). These principles are especially salient here. Modern arbitration rules, domestic and international, such as the ICC and LCIA rules provide for the arbitral tribunals to control and limit discovery. If Dallah was in arbitration conducted in the U.S., instead of England, the Federal Arbitration Act and jurisprudence would not permit such pre-hearing discovery. The only mechanism available to Dallah would be to seek permission of and

subpoenas issued by the arbitral tribunal. FEDERAL ARBITRATION ACT, 9 U.S.C. § 3, 4, and 7. Even if the tribunal granted the subpoena request, any such subpoenas would only be enforceable if the arbitral tribunal was conducting a hearing in the federal district where the evidence sought was located. 9 U.S.C. § 3; *see, e.g., Thompson v. Zavin*, 607 F. Supp. 780, 782 (C.D. Ca. 1984); *Western Employers Ins. Co. v. Merit Ins. Co.*, 492 F. Supp. 53, 54 (N.D. Il. 1979).

Dallah has waived any right it may have had to seek relief from a U.S. District Court. Dallah freely agreed to the LCIA Rules, which explicitly prohibit parties from seeking relief from any court. Now Dallah is violating and attempting to circumvent the LCIA Rules by asking this Court for relief. The patent logic of the *In re Grupo Unidos*, supra, mandates this Court deny Dallah's § 1782 request and do so in a published opinion so in the future parties will not be tempted to unnecessarily involve the federal courts in private arbitration cases. Alternatively, if the Court is inclined to allow any discovery, federal arbitration policy is best served by expressly conditioning it upon receipt of an affirmative request by the arbitral tribunal, which the parties agreed would have sole jurisdiction of their disputes.

C. **THE REQUEST IS CONTRARY TO THE PARTIES' AGREED EXPECTATIONS OF CONFIDENTIALITY, AND IS UNDULY BURDENSOME AND INTRUSIVE.**

In considering an application under § 1782, "unduly intrusive or burdensome requests may be rejected." *Intel*, 542 U.S. at 264. Dallah states it wishes to discover documents "including, *inter alia*, the ownership of Legal Advantage during the relevant time period, as reported in Legal Advantage's state and federal tax filings." The request is burdensome, as the Interested Parties have already produced most, if not all, the material Dallah seeks. Dallah, as an investor in Legal Advantage, has regularly received appropriate financial information, used the U.S. Mail, the domestic and interstate wires and email to regularly communicate its views and desires to management, which it presumably does with any other of Dallah's active United States

7

investments.

Dallah's request for Legal Advantage's information is also intrusive, especially considering the arbitrating parties bargained for and agreed to confidentiality when they agreed to ICC arbitration and later to LCIA arbitration. The ICC Rules clearly contemplate confidentiality of arbitral proceedings. Article 34 of the ICC Rules states, "**[c]onfidential information disclosed during the proceedings…shall not be divulged by an arbitrator or by the administrator**." Article 27.09 of the ICC Rules even states that arbitral awards are confidential.

The LCIA Rules in Article 30 require confidentiality and states:

> **The parties undertake as a general principle to keep confidential all awards in the arbitration, together with all materials in the arbitration created for the purpose of the arbitration and all other documents produced by another party** in the proceedings not otherwise in the public domain, save and to the extent that disclosure may be required of a party by legal duty, to protect or pursue a legal right, or to enforce or challenge an award in legal proceedings before a state court or other legal authority.

Dallah's Application attempts to unilaterally deny the "Interested Parties" of the privacy and confidentiality they bargained for and expected. The tax filings Dallah seeks are particularly confidential in nature. "Tax returns frequently are protected from public discovery." *Minogue v. Modell*, No. CCB-03-3391, 2011 U.S. Dist. LEXIS 33767 (D. Md. March 30, 2011) (citing *Minter v. Wells Fargo Bank, N.A.*, 675 f. Supp. 2d 591, 597 (D.Md. 2009)). Dallah, Mr. Baig, and Legal Advantage agreed to a confidential arbitration before a specific tribunal. Accordingly, Dallah should be required to seek any discovery from the arbitral tribunal, not this Court.

### D. EQUITY WEIGHS AGAINST GRANTING DALLAH'S APPLICATION.

Authorizing discovery in this asymmetric instance, where Dallah, though agreeing to the jurisdiction of a foreign arbitration tribunal, can also seek discovery in a United States District Court but the Respondents cannot, puts U.S. companies at a distinct disadvantage in international

arbitration. Dallah is a Bahraini entity. The Interested Parties could not apply to a federal district court to obtain discovery from Dallah. Instead, the Interested Parties' only opportunity for discovery is to complying with the agreed arbitral procedures. Granting Dallah's Application would reinforce the abusive precedent set where foreign companies obtain court discovery from U.S. businesses, but those U.S. entities are denied the same relief. Certainly Congress never intended 28 U.S.C. § 1782 to affirmatively disadvantage and prejudice U.S. businesses. The Court should deny Dallah's request and order it to follow the LCIA arbitral procedures it agreed.

## CONCLUSION

The Interested Parties respectfully urge this Court to deny Dallah's Ex Parte Application for 28 U.S.C. § 1782 Discovery Assistance in a published opinion for the aforesaid reasons.

DATED: August 24, 2015

Respectfully submitted,

BLUME, FAULKNER, & SKEEN, PLLC

/s/ Richard D. Faulkner

Richard D. Faulkner (Pro Hac Pending)
Louisiana State Bar No. 05470
111 W. Spring Valley Road, Suite 250
Richardson, Texas 75081
Telephone: 214-373-7788
Facsimile: 214-373-7783
rfaulkner@bfslawgroup.com

INTERNATIONAL LAW GROUP, LLC

/s/ Mike Meier

Mike Meier (MD16007)
6525, 76th Street
Cabin John, Maryland 20818
Telephone: 202-580-8759
Facsimile: 202-747-5795
mike.meier.esq@internationallawgroup.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 24th day of August, 2015, a true copy of the foregoing was served electronically on all counsel of record.

> By: /s/ Mike Meier
> Mike Meier (MD16007)
> INTERNATIONAL LAW GROUP, LLC
> 6525 76th Street
> Cabin John, MD 20818
> Phone: (202) 580-8759
> Facsimile: (202) 747-5795
> E-mail:
> Mike.Meier.Esq@internationallawgroup.com